MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 84
Docket:        Som-25-264
Argued:        January 6, 2026
Decided:       August 13, 2026

Panel:         STANFILL, C.J., and CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

AMY B. BEEM

v.

NANCY M. TEMPLE

LAWRENCE, J.

[¶1] On August 2, 2022, Amy B. Beem was riding her mule on an unpaved road when Nancy M. Temple's utility terrain vehicle (UTV) crashed nearby, causing Beem's mule to bolt. Beem fell from her mule and was injured. Beem brought a negligence action against Temple in the Superior Court, and Temple moved for summary judgment, asserting immunity from liability under 7 M.R.S. § 4103-A (2026) and contending that Beem failed to make a prima facie case of negligence. The Superior Court (Somerset County, *Mullen, C.J.*) granted summary judgment for Temple, and Beem appealed. Because we hold that 7 M.R.S. § 4103-A grants immunity from liability only to equine activity sponsors, equine professionals, and those engaged in equine activities, and that Beem made a prima facie case of negligence, we vacate the judgment.

## I. BACKGROUND

[¶2] Viewing the summary judgment record in the light most favorable to Beem as the non-prevailing party, the following facts are undisputed for purposes of summary judgment. *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 2, 140 A.3d 1242.

[¶3] On August 2, 2022, Beem and her friend were riding equine animals on an unpaved road in or around St. Albans. Shortly after the two riders encountered a curve in the road, they heard a UTV driven by Temple approach them from behind. Temple, heading downhill at a speed at or below the speed limit, kept her foot on the brake to control her speed. Temple first noticed Beem's friend on the right side of the unpaved road and began to move left to avoid hitting her. Temple then noticed Beem in or near the middle of the road. Temple turned her UTV hard to the left to avoid hitting Beem, and her UTV overturned. The UTV did not hit either equine. As a result of the crash, however, both equines spooked and bolted. At some point, Beem fell off her mule and suffered significant injuries.

[¶4] In June 2023, Beem filed a negligence action against Temple in the Superior Court. Temple moved for summary judgment, *see* M.R. Civ. P. 56(b), arguing that 7 M.R.S. § 4103-A immunizes Temple from liability and that Beem

failed to establish a prima facie case of negligence. The court held a hearing on Temple's motion for summary judgment. On May 20, 2025, the court granted Temple's motion for summary judgment on the sole basis that 7 M.R.S. § 4103-A immunizes Temple from liability. Beem timely appealed from the judgment. *See* M.R. App. P. 2B(c)(1).

[¶5] On appeal, Beem argues that the court misconstrued 7 M.R.S. § 4103-A when it determined that Temple was immune from liability. Temple contends that the court correctly interpreted and applied 7 M.R.S. § 4103-A, and that even if the court erred, Temple is still entitled to summary judgment because Beem failed to establish a prima facie case of negligence.

## II. DISCUSSION

### A. Statutory Immunity from Liability

[¶6] Title 7 M.R.S. § 4103-A provides immunity from liability for personal injury stemming from the dangers inherent in equine activities. We consider, as a matter of first impression, whether this statute limits the liability of an individual who was not engaged in an equine activity for injuries suffered by a person who was engaged in an equine activity.

[¶7] Statutory interpretation is a matter of law that we review de novo. *Sunshine v. Brett*, 2014 ME 146, ¶ 13, 106 A.3d 1123. The question of whether

4

the party asserting immunity has "established the applicability of the immunity provision" is a question of law. *McCandless v. Ramsey*, 2019 ME 111, ¶ 12, 211 A.3d 1157; *see Perry v. Dean*, 2017 ME 35, ¶ 11, 156 A.3d 742.

[¶8]  When engaging in statutory interpretation, we endeavor to effectuate the legislative intent, and the "best indicator of legislative intent is the plain language of the statute itself." *Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 7, 187 A.3d 609.  "If the statute is unambiguous, we interpret the statute according to its unambiguous language, unless the result is illogical or absurd." *Id.* (quotation marks omitted).  "If a statute can reasonably be interpreted in more than one way and comport with the actual language of the statute, an ambiguity exists." *Id*. (alteration and quotation marks omitted).  If a statute is ambiguous, we "consider the statute's meaning in light of its legislative history and other indicia of legislative intent." *Id.* (quotation marks omitted); *see McCandless*, 2019 ME 111, ¶ 13, 211 A.3d 1157.

### 1.    Statutory Text

[¶9]  We begin by determining whether the text of 7 M.R.S. § 4103-A(1) is ambiguous.  The first two sentences of the subsection read:

> Except as provided in subsection 2, an equine activity sponsor, an equine professional or any other person engaged in an equine activity is not liable for any property damage or damages arising from the personal injury or death of a participant or spectator

resulting from the inherent risks of equine activities. Except as provided in subsection 2, a person may not make any claim or recover from any person for any property damage or damages for personal injury or death resulting from the inherent risks of equine activities.

7 M.R.S. § 4103-A(1).[1] The language of each of the first two sentences of section 4103-A(1), taken in isolation, is plain: the first sentence immunizes *specific categories* of individuals from liability for personal injury to a *participant or spectator*, and the second sentence immunizes *all* persons from liability for personal injury to *any person*. Read in conjunction, however, these two sentences present an interpretive quagmire: if we were to embrace the broad language in the second sentence, the first sentence is surplusage and the categories of people it refers to are meaningless.

[¶10] To determine the persons that section 4103-A(1) covers, we examine the plain meaning of the statutory text in the context of the whole statutory scheme. *Sunshine*, 2014 ME 146, ¶ 13, 106 A.3d 1123. The first two

---

[1] The remainder of the subsection reads:

Each participant and spectator in an equine activity expressly assumes the risk and legal responsibility for any property damage or damages arising from personal injury or death that results from the inherent risk of equine activities. Each participant has the sole responsibility for knowing the range of that person's ability to manage, care for and control a particular equine or perform a particular equine activity. It is the duty of each participant to act within the limits of the participant's own ability, to maintain reasonable control of the particular equine at all times while participating in an equine activity, to heed all warnings and to refrain from acting in a manner that may cause or contribute to the injury of any person or damage to property.

sentences of subsection 1 reference subsection 2. Subsection 2 provides

exceptions to immunity for equine activity sponsors, equine professionals, and

other persons engaged in equine activities. 7 M.R.S. § 4103-A(2). It reads:

> **Exceptions; participants.** Nothing in subsection 1 prevents or limits the liability of an equine activity sponsor, an equine professional or any other person engaged in an equine activity, if the equine activity sponsor, equine professional or person:
>
> A. Provided the equipment or tack, and knew or should have known that the equipment or tack was faulty, and the equipment or tack was faulty to the extent that it did cause the injury;
>
> B. Owns, leases, rents or otherwise is in lawful possession and control of the land or facilities upon which the participant sustained injuries because of a dangerous latent condition that was known or should have been known to the equine activity sponsor, equine professional or person;
>
> C. Commits an act or omission that constitutes reckless disregard for the safety of others and that act or omission caused the injury. For the purposes of this section, "reckless" has the same meaning as "recklessly," defined in Title 17-A, section 35, subsection 3, paragraph A; or
>
> D. Intentionally injures the participant.

*Id.*

[¶11] Subsection 3 limits immunity for equine professionals when a

person engaging in an equine activity is not on notice of the risks. *Id.*

§ 4103-A(3). Subsection 4 provides exceptions to immunity for equine activity

sponsors, equine professionals, and other persons engaged in equine activities when a spectator or non-participant is injured. *Id.* § 4103-A(4).

[¶12] Notably, section 4103-A expressly mentions immunity only for equine activity sponsors, equine professionals, and other persons engaged in equine activities. Apart from the broad language in the second sentence of subsection 1, section 4103-A does not indicate anywhere else that it grants immunity to individuals other than equine activity sponsors, equine professionals, and other persons engaged in equine activities. The context of the whole statutory scheme thus supports a narrow construction of the language of section 4103-A(1).

## 2. Legislative History

[¶13] To the extent that section 4103-A(1) is ambiguous because its ambit is reasonably susceptible to more than one interpretation, we consider other indicia of legislative intent. *See Sunshine*, 2014 ME 146, ¶ 13, 106 A.3d 1123.

[¶14] The legislative history supports a narrow construction of 7 M.R.S. § 4103-A(1). In 1999, the Legislature passed "An Act to Clarify the Equine Activity Law," P.L. 1999, ch. 498, §§ 2, 5, at the urging of members of the equestrian community, who expressed concerns about prohibitively expensive

insurance premiums and the risk of excessive liability for horse owners and equine professionals due to the dangers inherent to equine activities. *See An Act to Clarify the Equine Activity Law: Hearing on L.D. 2108 Before the J. Standing Comm. on Agric., Conservation and Forestry*, 119th Legis. (1999) (materials submitted by Jacquelyn Krupinksy, Sarah Brooks, Rick Shepherd, Jim Jaeger, Stephen Ulman, and James Weber); *McCandless*, 2019 ME 111, ¶ 17, 211 A.3d 1157. As we have previously stated, "the entire purpose of the law [is] to curtail liability for injuries arising from risks that are impracticable or impossible to eliminate due to the nature of equines and to allow reasonable access to insurance for those engaged in horse-related activities." *McCandless*, 2019 ME 111, ¶ 18, 211 A.3d 1157 (quotation marks omitted).

[¶15] A broad interpretation of section 4103-A(1), in which all persons are immune from liability, would not comport with the legislative purpose and would lead to absurd results. For example, if a horseback riding instructor intentionally spooks a horse during a riding lesson, causing a rider to fall and suffer injury, the instructor could be held liable per subsection 2(D), which provides an exception to immunity from liability arising from the intentional acts of equine activity sponsors, equine professionals, and others engaged in an equine activity. 7 M.R.S. § 4103-A(2)(D). By contrast, if a person who is not

engaged in an equine activity approaches a riding arena and intentionally spooks a horse, that person would be immune from liability because the exceptions in subsection 2 apply only to equine activity sponsors, equine professionals, and other persons engaged in an equine activity. Given the legislative purpose of the equine activities law that we discerned in *McCandless*, 2019 ME ¶ 18, 211 A. 3d 1157, it simply cannot be the case that 7 M.R.S. § 4103-A provides broader immunity to outsiders than to equine activity sponsors, equine professionals, and other persons engaged in an equine activity.

[¶16] The legislative history further illuminates the intended meaning of section 4103-A(1). Significantly, the Joint Standing Committee on Agriculture, Conservation and Forestry (the Committee) amended an early draft of the first sentence of section 4103-A(1) to narrow its scope. The bill's original language read: "Except as provided in subsection 2, an equine activity sponsor, an equine professional *or any other person* is not liable for any property damage or damages arising from the personal injury or death of a participant or spectator resulting from the inherent risks of equine activities." L.D. 2108 (119th Legis. 1999) (emphasis added). The Legislature qualified "any other person" by amending the bill's language to read "any other person *engaged in an equine*

*activity*." Comm. Amend. A to L.D. 2108, No. S-305 (119th Legis. 1999) (emphasis added). The Legislature ultimately adopted this amended language. *See* 7 M.R.S. § 4103-A(1). If the second sentence of section 4103-A(1) is interpreted broadly to immunize all persons from liability, the Committee's amendment to the first sentence of subsection 1 would be given no effect. We therefore hold that 7 M.R.S. § 4103-A(1) grants immunity from liability only to equine activity sponsors, equine professionals, and other persons engaged in an equine activity.

[¶17] Moreover, this conclusion is consistent with other familiar principles of statutory construction. Specifically, "to the extent that a statute may work in derogation of common law, we will construe the statute strictly and will not extend it by implication." *Smith v. Henson*, 2025 ME 55, ¶ 12, 339 A.3d 816; *see Batchelder v. Realty Res. Hosp., LLC*, 2007 ME 17, ¶ 23, 914 A.2d 1116 ("[W]e have long embraced the well-established rule of statutory construction that the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or by necessary implication." (quotation marks omitted)). We note that, at common law, no one had immunity from liability

for damages arising from equine activities. *See, e.g.*, *Blackden v. Blaisdell*, 113 Me. 567, 93 A. 540 (1915); *Cleveland v. City of Bangor*, 87 Me. 259, 32 A. 892 (1895); *Aldrich v. Inhabitants of Gorham*, 77 Me. 287 (1885). Thus, our construction of 7 M.R.S. § 4103-A(1) does not by implication extend the reach of the statutory immunity beyond equine activity sponsors, equine professionals, and persons engaged in equine activities to include someone who was not engaged in such activities. *See Smith*, 2025 ME 55, ¶¶ 30-33, 339 A.3d 816.

[¶18]  Because Temple was not engaged in an equine activity, the immunity provided by 7 M.R.S. § 4103-A does not apply to her. We thus do not reach the question of whether Beem's injury resulted from an inherent risk of equine activities.[2]

---

[2]  Although we conclude that the immunity afforded by 7 M.R.S. § 4103-A does not apply to Temple, were we to address Temple's assertion that this case presents the exact scenario the statute was meant to address—injuries to an individual engaged in an equine activity resulting from the inherent risks of that activity, *see* 7 M.R.S. § 4101(7-A) (2026) (defining "inherent risks of equine activities")—we would find it decidedly unpersuasive. As we noted above, the Legislature enacted 7 M.R.S. § 4103-A at the urging of members of the equestrian community, who expressed concerns about prohibitively expensive insurance premiums and the risk of excessive liability for *horse owners and equine professionals* due to the dangers inherent to equine activities. *See McCandless*, 2019 ME 111, ¶ 17, 211 A.3d 1157. Thus, in *McCandless* we concluded that "the entire purpose of the law [is] to curtail liability for injuries arising from risks that are impracticable or impossible to eliminate due to the nature of equines and to allow reasonable access to insurance *for those engaged in horse-related activities*." *Id.* ¶ 18 (emphasis added) (quotation marks omitted). As someone not engaged in an equine activity, Temple's liability for injury that she may have caused to a person engaged in an equine activity, and the availability of insurance to satisfy such liability, were not in any way, shape, or form within the scope of what the Legislature intended to address by enacting 7 M.R.S. § 4103-A.

## B.     Negligence

[¶19]  We review a trial court's grant of summary judgment "de novo, viewing the facts in the light most favorable to the nonmoving party, to determine whether the parties' statements of material facts reveal a genuine issue of material fact."  *Hilderbrand v. Wash. Cnty. Comm'rs*, 2011 ME 132, ¶ 7, 33 A.3d 425. "A genuine issue of material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth."  *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504.

[¶20]  "When the moving party is the defendant, the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action."  *Grant*, 2016 ME 85, ¶ 13, 140 A.3d 1242 (quotation marks omitted).  "We will affirm the grant of a summary judgment against a plaintiff who presents insufficient evidence to support an essential element in her cause of action, such that the defendant would be entitled to judgment as a matter of law on that state of the evidence at a trial."  *Bell v. Dawson*, 2013 ME 108, ¶ 16, 82 A.3d 827.  A plaintiff's assertion of negligence "will not survive summary judgment if she or he relies on mere conclusory allegations, improbable inferences, and unsupported speculation."  *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 22, 974 A.2d 276 (quotation marks omitted).

However, "it is fundamental that when a non-moving party on summary judgment presents a factually well-supported and reasonable inference, that party is entitled to the benefit of any such favorable inference at the summary judgment stage, and is entitled to have the inference presented to the jury." *Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 21, 969 A.2d 935.

[¶21]  "A cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury."  *Est. of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 16, 60 A.3d 759. There is no question that Beem adequately established that she suffered an injury.  Temple argues that Beem failed to establish the other three elements of negligence.

### 1.    Duty of Care

[¶22]  Whether a duty exists, and the scope of such duty, is a question of law that we review de novo.  *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 17, 11 A.3d 308.

[¶23]  Temple owed Beem a duty of care, both generally at common law and in this instance specifically by statute.  "The duty of reasonable care that applies in an action for general negligence is a duty to act reasonably to avoid

14

causing physical harm to others." *Boivin v. Somatex, Inc.*, 2022 ME 44, ¶ 12, 279 A.3d 393 (emphasis and quotation marks omitted). Further, 29-A M.R.S. § 2055(3-A) (2026) provides: "When traveling in the same direction as an animal on a way, an operator must use reasonable caution in passing the animal." Thus, we hold that Temple had a duty to exercise reasonable caution when encountering or attempting to pass Beem and her riding companion.

## 2. Breach of the Duty of Care

[¶24] We next consider whether Beem has sufficiently presented prima facie evidence that Temple breached her duty of care. Although Beem alleges that Temple was operating her vehicle too fast for road conditions, she fails to support this contention with evidence in the record. Temple contends that she was driving at or below the speed limit, and Beem failed to support her denial of this statement with record evidence. Even so, there still exists a general dispute as to the reasonableness of Temple's speed under the circumstances present here, her actions in swerving left, and her manner of driving around the bend on an unpaved, downward-sloping road. Ambiguities regarding the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party. *See Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d

683. We therefore conclude that Beem presented prima facie evidence of a breach.[3]

### 3. Causation

[¶25] Finally, we consider the element of causation. Temple cites *Durham v. HTH Corp.*, 2005 ME 53, 870 A.2d 577 (concluding that the plaintiff had not established that a metal strip above the stairs was not reasonably safe for invitees), *Houde v. Millett*, 2001 ME 183, 787 A.2d 757 (holding that the plaintiff failed to establish that soot on the floor caused her to slip because she had not provided evidence that soot was on the floor at the time of her fall), and *Addy v. Jenkins, Inc.*, 2009 ME 46, 969 A.2d 935 (concluding that the plaintiff failed to support how he fell from scaffolding where he could not remember what caused him to fall), to argue that Beem failed to establish causation because she did not present sufficient evidence that could establish at trial exactly why she fell off her mule.

---

[3] Temple additionally contends that Beem cannot establish liability without an expert witness because an expert witness is required to prove that Temple was speeding. However, a jury could reasonably find that Temple's actions to avoid hitting the equines were unreasonable even if she was driving at or below the speed limit. Expert witnesses are not required "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge." *Chasse v. Mazerolle*, 622 A.2d 1180, 1182 (Me. 1993) (quotation marks omitted). This is especially true when a "statute establishes the standard of care." *Id.* We are thus unpersuaded by Temple's argument that an expert witness is required to establish liability.

[¶26] Here, Beem has presented evidence that she fell off when her mule spooked and bolted in response to the crash. Although the statements of material fact do not specify that Beem fell off *because of* her mule's reaction, such an inference here is reasonable and is a smaller gap to bridge than in *Durham*, *Houde*, and *Addy*. Because a nonmoving party is entitled to reasonable factual inferences, *see Beaulieu*, 2002 ME 79, ¶ 2, 796 A.2d 683, we conclude that Beem presented sufficient evidence that could adequately establish causation at trial.

[¶27] We therefore hold that, because 7 M.R.S. § 4103-A does not provide immunity to Temple, and because Beem has established a prima facie case of negligence, Temple was not entitled to summary judgment. We thus vacate the court's judgment.

The entry is:

> Judgment vacated. Remanded for further
> proceedings consistent with this opinion.

Michael T. Bigos, Esq., Joseph G. E. Gousse, Esq., and Charles King, Esq. (orally), Berman & Simmons, P.A., Lewiston, for appellant Amy B. Beem

John R. Veilleux, Esq., and Samuel G. Johnson, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellee Nancy M. Temple